**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **LARRY VAN STEENHUYSE,**<br>Plaintiff,<br>vs.<br>**UBS FINANCIAL SERVICES, INC.,**<br>Defendant. | CASE NO. 18-cv-02041-YGR<br>**ORDER GRANTING MOTION TO REMAND**<br>Re: Dkt. No. 10 |

Plaintiff Larry Van Steenhuyse moves to remand this action to the Alameda County Superior Court on the grounds that defendant UBS Financial Services, Inc. ("UBS") has not shown established that the amount in controversy exceeds $75,000, as required by 28 U.S.C. § 1332(a). In addition, pursuant to 28 U.S.C. § 1447(c), plaintiff requests an award of reasonable costs and attorney's fees in the amount of $7,700 incurred a result of the removal.

Having carefully considered the papers submitted, for good cause shown, and for the reasons explained below, the Court **GRANTS** plaintiff's motion to remand. UBS, as the removing party, has failed to meet its burden to establish that the amount in controversy on plaintiff's claims here meets the jurisdictional threshold for removal based upon diversity jurisdiction. The request for attorneys' fees and costs under section 1447(c) is **DENIED**.

**I. BACKGROUND**

The instant action was filed in the Superior Court of the State of California, County of Alameda on February 26, 2018, and removed to this Court on April 3, 2018. (*See* Dkt. No. 1, Notice of Removal ("NOR"); Dkt. No. 17, Exhibits to Notice of Removal ("NOR Exh."), at NOR Exh. 2.) The matter was removed pursuant to 28 U.S.C. §§ 1332 and 1441, on the grounds that there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a).

Plaintiff's complaint alleges he is employed by UBS as a financial advisor (NOR Exh. 2) and asserts a single claim for civil penalties under the California Labor Code Private Attorney's General Act ("PAGA"), Cal. Lab. Code § 2698 *et seq.*[1] (*Id.*) The complaint alleges that UBS failed to compensate plaintiff and other financial advisors in accordance with the requirements of California's Labor Code, entitling plaintiff to seek penalties for those violations based upon:

1. failure to reimburse for reasonable and necessary business expenses in violation of §§ 2802, 221-224, 400-410, and 1198;

2. failure to pay sales commissions when "reasonably calculable," in violation of § 204;

3. failure to pay overtime, in violation of §§ 558 and 1194;

4. failure to provide meal and rest breaks, in violation of § 512;

5. failure to furnish complete and accurate wage statements, in violation of § 226;

6. failure to pay terminated or quitting employees their final paychecks within the deadlines set forth in §§ 201-202, or pay waiting time penalties as required by § 203; and

7. a requirement that employees sign documents containing illegal class and representative action waivers, in violation of § 432.5. (*Id.* ¶¶ 9-13.)

UBS removed the action pursuant to 28 U.S.C. § 1332(a), alleging that the parties are diverse and that the civil penalties attributable to California Labor Code violations against plaintiff plus reasonable attorney's fees exceed $75,000. (NOR at 4-7.) Plaintiff concedes he and UBS are citizens of different states, but contends that UBS's calculations of the penalties at issue are overstated, and UBS cannot prove by a preponderance of evidence that the jurisdictional threshold is met. Plaintiff argues that the amount in controversy here does not exceed $475 in overtime penalties under section 558, $4,800 in other PAGA penalties, and a pro-rata share of attorneys' fees at $42, for a total of $5,317.00.

Plaintiff further argues that the Court should exercise its discretion pursuant to 28 U.S.C. section 1447(c) to award "just costs and any actual expenses, including attorney fees, incurred as a result of the removal."

---

[1] All references are to the California Labor Code unless otherwise stated.

2

## II. APPLICABLE STANDARDS

The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction," and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (*citing Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1988). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id.* (*citing Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 712 n. 3 (9th Cir. 1990)).

Under 28 U.S.C. § 1332(a), district courts have jurisdiction over civil actions in which citizenship of the parties is diverse and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." When it is unclear from the face of the complaint whether the amount in controversy is met, the removing defendant bears the burden of establishing that the amount in controversy exceeds the jurisdictional threshold by a preponderance of the evidence. *Urbino v. Orkin Servs. of California, Inc.*, 726 F.3d 1118, 1121–22 (9th Cir. 2013). A court may consider facts in the notice of removal, as well as "summary-judgment-type evidence" relevant to the amount in controversy at the time of removal. *Singer v. State Farm Mutual Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997). "[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). Unlike removal under CAFA, in which the Congressional intent underlying the statute favors a finding of federal court jurisdiction, *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014), a strong presumption *against* removal jurisdiction exists in a non-CAFA case. *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 550 (9th Cir. 2018) (presumption against removal jurisdiction requires a strict construction and rejection of jurisdiction if there is "any doubt as to the right of removal in the first instance") (quoting *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (per curiam)).

Under 28 U.S.C. section 1447(c), the Court has the discretion to award plaintiff "just costs and any actual expenses, including attorney fees, incurred as a result of the removal." "Absent unusual circumstances, courts may award attorney's fees under [section] 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an

3

objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). "Removal is not objectively unreasonable 'solely because the removing party's arguments lack merit, or else attorney's fees would always be awarded whenever remand is granted.'" *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 552 (9th Cir. 2018) (quoting *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008)).

**III. DISCUSSION**

**A. Calculation of the Amount In Controversy**

UBS premises its calculation of penalties for the alleged violations on myriad assumptions:

(1) that plaintiff worked 31 full pay periods between December 21, 2016, and the date of removal;

(2) for all but section 1994, penalties would be $100 for the first pay period, and $200 per pay period for each subsequent pay period (citing § 2699(f)(2));

(3) for overtime violations, penalties under section 558 would be $50 for the first pay period, and $100 for each subsequent violation, plus "an amount sufficient to recover underpaid wages." Cal. Lab. Code § 558(a);

(4) plaintiff worked an average of 2 hours overtime every week, or 4 hours per pay period, based on the allegation that he did so "routinely;"

(5) plaintiff's underpaid wages would be $21,122.48 per pay period; and

(6) attorneys' fees would be equal to 25% of the total civil penalties at issue.

Based upon these assumptions, UBS calculates that section 558 penalties would be $24,172.48, all other Labor Code section penalties would be $52,500, and attorneys' fees would be $19,055.62, for a total amount in controversy of $95,278.10. Plaintiff argues that the assumptions underlying UBS's calculations are incorrect, for several reasons. The Court considers each argument in turn.

*1. "Initial" vs. "Subsequent" Violations*

First, plaintiff contends that UBS has assumed incorrectly all violations after the first pay period are penalized at the "subsequent" violation amount. Despite having made this assumption in the NOR, UBS apparently concedes this point in response to the motion.

4

California law is clear that a "subsequent violation" level applies only to violations after the employer is on notice that its continued conduct is unlawful. Until "notified that it is violating a Labor Code provision (whether or not the Commissioner or court chooses to impose penalties), the employer cannot be presumed to be aware that its continuing underpayment of employees is a "violation" subject to penalties." *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1209 (2008); *see Trang v. Turbine Engine Components Technologies Corp.,* 2012 WL 6618854, at *5 (C.D. Cal. 2012) ("'subsequent' violations in the PAGA context means not just later in time but following notice to the employer that it is in violation of the Labor Code," citing *Amaral*); *Patel v. Nike Retail Servs., Inc.*, 58 F. Supp. 3d 1032, 1042 (N.D. Cal. 2014) (same).

Here, plaintiff served his LWDA notice on December 22, 2017. There were 24 pay periods between December 22, 2016 and December 22, 2017 and 7 pay periods between December 22, 2017, and the date of removal. (NOR Exh. 10). Thus, the 24 pay periods before the LWDA notice should therefore be penalized at the lower "initial" violation level. The Court agrees with plaintiff on this issue.

### 2. *Limiting Amount In Controversy to Plaintiff's 25% Share*

As a second overarching issue, plaintiff contends that the "amount in controversy" calculation should be limited to the 25% of penalties that would be payable to plaintiff if he prevails on his PAGA claim. PAGA provides that any civil penalties are distributed 75% to the California Labor Workforce Development Agency ("LWDA") and 25% to the aggrieved employee. Cal. Lab. Code § 2699(i). Plaintiff argues that a majority of courts who have considered the issue agree and do not include the 75% of penalties that are paid to the state. UBS argues, on the other hand, that adjudication of an individual plaintiff's PAGA claim implicates the rights of both plaintiff and the LWDA, such that the potential amount of penalties to be awarded must be combined to calculate the amount in controversy.

The Ninth Circuit has not squarely considered the issue, nor have the California state appellate courts. The Ninth Circuit has held that a plaintiff's entitlement to PAGA penalties cannot be aggregated with the penalties owed to other employees in order to reach the jurisdictional threshold. *Urbino v. Orkin Servs. of California, Inc.,* 726 F.3d 1118, 1122–23 (9th

Cir. 2013). The Court in *Urbino* considered the traditional rule that multiple plaintiffs who assert separate and distinct claims are precluded from aggregating them to meet the amount in controversy requirement for diversity jurisdiction. The exception to this rule is when class members "unite to enforce a single title or right in which they have a common and undivided interest." *Urbino*, 726 F.3d at 1122 (quoting *Snyder v. Harris*, 394 U.S. 332, 335 (1969)). In determining the character of the interest the court looks to whether the "claims are derived from rights that [plaintiffs] hold in group status" in which the claims are "common and undivided." *Id*. "[S]imply because claims may have 'questions of fact and law common to the group' does not mean they have a common and undivided interest." *Id*. Only where the defendant owes an obligation to the plaintiffs as a group and not to the individuals will a common and undivided interest exist. *Urbino*, 726 F.3d at 1122. The Ninth Circuit in *Urbino* held that, in the context of a PAGA claim, "[t]o the extent [the p]laintiff can . . . assert anything but his individual interest . . . we are unpersuaded that such a suit, the primary benefit of which will inure to the state, satisfies the requirements of federal diversity jurisdiction [since t]he state, as the real party in interest, is not a 'citizen' for diversity purposes." *Id.*[2]

Subsequent district court decisions are split as to whether *Urbino* would require disaggregating the LWDA's portion of the penalties from the individual plaintiff's in calculating the jurisdictional minimum. Under one school of thought, the defendant employer owes an obligation to both the plaintiff and the LWDA to obey the state Labor Code. Accordingly, a single Labor Code violation should be considered to give rise to a single penalty obligation to both "at the same time and in the same way." *Patel,* 58 F. Supp. 3d at 1047–48; *accord Mitchell v. Grubhub Inc.*, No. CV1505465BROASX, 2015 WL 5096420, at *6 (C.D. Cal. Aug. 28, 2015) (including the entire amount of penalties for plaintiff's PAGA claims in calculating the amount in

---

[2] Note that "the anti-aggregation rule does not apply to CAFA class actions, where jurisdiction is based on 28 U.S.C. § 1332(d)." *Pagel v. Dairy Farmers of Am., Inc.*, 986 F. Supp. 2d 1151, 1159 (C.D. Cal. 2013). "[I]n enacting CAFA, Congress *explicitly endorsed aggregation* of class members' claims when assessing whether the amount in controversy exceeds $5 million. 28 U.S.C. § 1332(d)(6)." *Id*. (emphasis supplied). The anti-aggregation rule continues to apply to diversity class actions, where jurisdiction is founded on 28 U.S.C. § 1332(a). *Urbino,* 726 F.3d at 1122.

6

controversy). Another line of cases rejects the reasoning of *Patel*, concluded that the "more persuasive reading of *Urbino* is that neither the share of other workers nor the share of the state is to be considered." *Lopez v. Ace Cash Exp., Inc.*, No. LA CV11-07116 JAK, 2015 WL 1383535, at *4–5 (C.D. Cal. Mar. 24, 2015); *see Garrett v. Bank of Am., N.A.,* 2014 WL 1648759, at *6 (N.D. Cal. Apr.24, 2014) (75% share of penalties to be paid to the LWDA is not included in determining the amount in controversy); *Willis v. Xerox Bus. Servs., LLC*, No. 1:13-CV-01353-LJO, 2013 WL 6053831, at *9 (E.D. Cal. Nov. 15, 2013) ("no logical support" for the notion that a defendant "may rely upon the 75% of the total amount payable to the LWDA, to demonstrate the $75,000 threshold"); *see also Lowndes v. Regis Corp.*, No. 116CV01041LJOSAB, 2016 WL 5456406, at *5 (E.D. Cal. Sept. 29, 2016) (plaintiff cannot meet jurisdictional amount in controversy threshold based upon the potential recovery of the LWDA).

The Court here agrees that *Urbino*, as well as the decisions in *Lopez* and similar district court decisions, support the conclusion that the 75% share of any PAGA recovery to be paid to the LWDA should not be aggregated with plaintiff's 25% share to establish the amount in controversy threshold.[3] Thus, the Court agrees with plaintiff on this issue.

### 3. *Over-Counting Penalties*

Plaintiff alleges that UBS failed to reimburse business expenses of its California Financial Advisors as required by section 2802. Plaintiff further alleges that several other violations flowed therefrom, including violations of sections: 221-224 (which prohibit deductions from earned wages); 400-410 (which prevent an employer from requiring an employee to post a cash bond);

---

[3] Defendant argues that the California Court of Appeals decision in *Esparza v. KS Indus., L.P.*, 13 Cal. App. 5th 1228 (2017), *review denied* (Nov. 15, 2017) supports the position that the LWDA's portion of a PAGA penalty claim should be included in the amount in controversy calculation. That decision concerned whether certain amounts recoverable under PAGA should be considered private statutory damages or civil penalties only otherwise obtainable by the state, and its effect on whether those claims could be compelled to arbitration. It does not undermine the reasoning of *Lopez* (and others) that, even if the claim could result in defendant paying out a larger amount based upon plaintiff acting as a representative or proxy for others, the value of plaintiff's individual claim cannot be aggregated with amounts payable only to the LWDA for purposes of establishing diversity jurisdiction. Moreover, defendant's calculations in no way account for the penalty versus damages distinctions made by the court in *Esparza*.

7

and 1198 (which makes it illegal for an employer to violate an order of the Industrial Welfare Commission). UBS's calculations assume that plaintiff seeks PAGA penalties for all four categories of violations. UBS argues that, in the absence of a concession by plaintiff that he will not seek separate penalties under all four categories, it is fair to assume that he will.

Plaintiff argues that the authorities under PAGA do not permit double (or triple or quadruple) recovery of penalties flowing from the same violation. However, the authority cited by plaintiff on this point is inapposite, as it addresses a situation in which a plaintiff seeks penalties both under a standalone section of the Labor Code and penalties under PAGA based upon the *identical* code section. *Guifu Li v. A Perfect Day Franchise, Inc.*, 2012 WL 2236752, at *17 (N.D. Cal. June 15, 2012). Here, by contrast, plaintiff's complaint seeks to proceed under four separate provisions, and the amount in controversy reasonably is determined on that basis. The Court agrees with defendant on this issue.

### *4. Violations of Sections 201-203*

UBS's calculations assume that plaintiff seeks penalties for violation of sections 201-202 and 203, which regulate the timing of an employee's *final* paycheck. At the time of removal, plaintiff was (and still is) a current employee of UBS. (Clapp Decl. ¶ 2.) Plaintiff concedes that he is not entitled to penalties for a late final paycheck, despite the fact that the complaint seeks such penalties. (Complaint, ¶ 12 [UBS does not pay its quitting or terminated employees all of the wages they are owed . . . ."].) Plaintiff does not appear to have standing to bring a claim for penalties based upon section 201-202 and 203 for timing of final paychecks. *See Taylor v. W. Marine Prod., Inc.*, No. C 13-04916 WHA, 2014 WL 1248162, at *3 (N.D. Cal. Mar. 26, 2014) (rejecting PAGA claim asserting penalties for Labor Code violations that plaintiff had not experienced for lack of Article III standing). Consequently, the Court will not include those penalties in the calculation of the amount in controversy here.

### *5. Overtime Violations*

Penalties arising from overtime violations have two components: (1) the set statutory amount for initial ($50) and subsequent ($100) violations; plus (2) the additional amount representing the underpaid wages. Cal. Lab. Code § 558(a). UBS calculates these amounts to be a

8

total of $24,172.48 ($3,050+$21,122.48). (NOR ¶ 17.) As to the first category, as explained above, UBS miscalculated the amount based on both the initial/subsequent violation issue, and the inclusion of the state's portion of the penalties.

In addition, plaintiff contends that UBS used faulty assumptions in estimating the amount of underpaid wages. UBS's calculations assumed plaintiff worked two hours per week of overtime every week, regardless of holidays or vacations. Plaintiff contends these estimates are speculative, lacking in evidentiary support, and improper. *See Garibay v. Archstone Communities LLC*, No. CV1210640PAVBKX, 2013 WL 12157241, at *5 (C.D. Cal. Feb. 4, 2013), *aff'd,* 539 F. App'x 763 (9th Cir. 2013) ("Without any evidence to support this assumption, the Court cannot rely on it to determine if Defendants have met their burden of proof. Defendants could have provided evidence of a policy requiring a certain number of hours per work week or a sampling of the number of hours employees worked per week during the applicable class period"). Although some courts have permitted defendants to assume certain variables in calculating the amount in controversy, more well-reasoned decisions find that those cases improperly "shift the burden to plaintiff to refute speculative assertions of jurisdiction and establish that there is no jurisdiction" despite it being defendant's burden to establish jurisdiction, and the contrary to the "strong presumption" against removal jurisdiction. *Garibay,* 2013 WL 12157241 at *6; *see also Marshall v. G2 Secure Staff, LLC*, No. 2:14-CV-04322-ODW, 2014 WL 3506608, at *3 (C.D. Cal. July 14, 2014) ("without evidence supporting the conclusion that once per week is suitable for calculation purposes, it is still an assumption, seemingly plucked from thin air"); *Roth v. Comerica Bank*, 799 F. Supp. 2d 1107, 1119-20 (C.D. Cal. 2010) ("More significantly, defendants' calculation admittedly rests on the speculative assumption that every class member was denied three to five hours of overtime pay every week.").

UBS contends that it should be permitted to rely on the allegations in plaintiff's complaint to create an estimate of hours worked for purposes of the amount in controversy. *Patel v. Nike Retail Servs., Inc.*, 58 F. Supp. 3d 1032, 1041 (N.D. Cal. 2014) ("if a defendant prepares a well-founded evidentiary record, a defendant's reasonable extrapolations from the plaintiff's allegations suffice to establish the amount in controversy, if unrebutted by the plaintiff"). Where a plaintiff

9

"provides no alternative method of valuation" for an overtime claim, a defendant is entitled to rely on "estimates of hours worked" in calculating the amount in controversy. *Lippold v. Godiva Chocolatier, Inc.*, 2010 WL 1526441, at *3 (N.D. Cal. Apr. 15, 2010); *Byrd v. Masonite Corp.*, 2016 WL 2593912, at *5 (C.D. Cal. May 5, 2016) (collecting cases).

The cases cited by UBS are, like so many of the PAGA decisions, decided under CAFA. The lower CAFA threshold for removal counsels caution in relying on decisions permitting assumptions by the removing defendant. Moreover, the Court notes that *Byrd* found broader allegations ("[a]t all material times," pursuant to a "uniform policy/practice of wage abuse") supported a lower estimate of overtime ("each putative class member is owed one hour of overtime for every two weeks") *Id.* at *5. Moreover, when the employer was in a position of adducing some evidence of the working hours and policies affecting potential overtime here, the failure to provide any evidence in support of the amount in controversy calculation is not excused. *Roth*, 799 F. Supp. 2d at 1130.

The allegations of the complaint do not, standing alone, justify an assumption that plaintiff incurred overtime every week, or in any particular amount. *Id.*; *see also Rivers v. Veolia Transportation Servs., Inc.*, No. 14-CV-2594 YGR, 2014 WL 3945789, at *3 (N.D. Cal. Aug. 11, 2014); *Morris v. LiquidAgents Health Care, LLC*, No. 12-CV-4220 YGR, 2012 WL 5451163, at *4 (N.D. Cal. Nov. 7, 2012). Because UBS has failed to meet its burden, the underpaid wages portion of the overtime claim will not be included in the calculation of the amount in controversy.

### 6. *Meal And Rest Break Violations*

Plaintiff next contends that UBS's calculations of meal and rest break penalties should be disregarded because UBS did not offer evidence of the amount of penalties based upon the correct, lower rate in section 558(a) in the NOR. UBS counters that the Court should assign a value to the meal and rest period claim, even if UBS did not calculate it based upon the appropriate statutory penalty amount, rather than give it zero value as plaintiff argues.

UBS, in the NOR, assumed that the alleged violation of meal and rest break protections would trigger the "default" penalty under PAGA, $100/$200 per pay period under section 2699(f)(2). However, under section 2699(f), default penalties do not apply when the Labor Code

10

provides a specific civil penalty for a violation. Here, the specific civil penalty for meal and rest break violations is found in section 558(a) and is equal to $50 per pay period for initial violations and $100 per pay period for subsequent violations, plus an amount sufficient to recover underpaid wages.[4] UBS does not dispute that the lower penalty rate would apply. The Court therefore includes the penalties for the missed meal and rest breaks as stated in section 558(a).

### 7. *Attorneys' Fees Estimate*

As courts of limited jurisdiction, a court cannot rely on speculation when including attorneys' fees for purposes of determining whether the jurisdictional amount is met. A court may consider attorneys' fees "if authorized by statute or contract." *See Galt G/S v. JSS Scandinavia,* 142 F.3d 1150, 1155–56 (9th Cir.1998). Here, plaintiff raises three arguments to assert that UBS improperly estimates attorneys' fees by basing them on a percentage of the total civil penalties, namely: (1) UBS estimates the attorneys' fees through the time of trial, not through the date of removal; (2) percentage of recovery is not the appropriate measure of attorneys' fees, to which plaintiff would be entitled under PAGA's fee-shifting statute, section 2699(g)(1); and (3) because the penalties are sought on behalf of all Financial Advisors in California, only a pro-rata share should be attributed to plaintiff.

On the first question of whether the attorneys' fees amount for purposes of the amount in controversy is limited to the time of removal or accounts for the entire life of the case, the Ninth Circuit has not ruled on the issue and the district court authority is split. *Hernandez v. Towne Park, Ltd.,* 2012 WL 2373372, at *19 (C.D.Cal. Jun.22, 2012) ("courts are split as to whether only attorneys' fees that have accrued at the time of removal should be considered in calculating the amount in controversy, or whether the calculation should take into account fees likely to accrue over the life of the case," and collecting cases). Some district courts have reasoned that attorneys' fees incurred after the date of removal are not properly included because the amount in

---

[4] The Court notes that the NOR did not include a specified amount for underpaid wages in connection with the meal and rest break claim, but only included an estimate of underpaid wages as part of the overtime calculation. (NOR ¶¶ 14, 16-17.) For the reasons stated *supra* § III.A.5, this estimate of underpaid wages cannot be used to calculate the amount in controversy on this claim.

11

controversy is to be determined as of the date of removal, and any future attorneys' fees would be speculative. *Kidner v. P.F. Chang's China Bistro, Inc.*, No. EDCV 15-287 JGB KKX, 2015 WL 2453523, at *5 (C.D. Cal. May 21, 2015). In light of UBS's proffer, discussed below, the Court need not resolve this issue.

As to the percentage of recovery estimate, plaintiff argues that PAGA's fee-shifting statute, section 2699(g)(1), applies, and requires a lodestar calculation. The Court agrees. *PLCM Group, Inc. v. Drexler*, 22 Cal.4th 1084, 1095 (2000); *Cacon v. Litke*, 181 Cal.App.4th 1234, 1259 (2010) (noting the California Supreme Court has "reaffirmed the primacy of the lodestar method for *all* fee-shifting statutes"); *see also Patel*, 58 F.Supp.3d at 1049 (using lodestar method to assess value of fee claim).[5] Here, UBS has made no attempt to offer evidence supporting a lodestar calculation of plaintiff's fees.

Finally, as to the pro-rata division of the estimated attorneys' fees, the Court finds more persuasive those cases finding that attorneys' fees cannot be attributed solely to a plaintiff acting in a representative capacity. *See Garrett*, 2014 WL 1648759, at *9; *Patel*, 58 F.Supp.3d at 1049; *see Gibson v. Chrysler Corp.*, 261 F.3d 927, 942 (9th Cir. 2001), *holding modified by Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005) (where statute provides for attorneys' fees as a "'bounty' for plaintiffs who successfully litigate in the public interest," they should not be allocated solely to the representative plaintiff for purposes of amount in controversy).

Given defendant's failure to provide any evidence estimating plaintiff's pro-rata share of the total lodestar here, the Court declines to include an attorneys' fee estimate as part of the amount in controversy calculation.

### 8. *Penalties for Future Violations*

In its opposition, UBS argues, for the first time, that the amount in controversy should include penalties that are likely to accrue after the time of removal. Having failed to include this

---

[5] UBS contends that a percentage of the recovery basis for attorneys' fees is proper here, relying on *Ford v. CEC Entm't, Inc.*, No. CV 14-01420 RS, 2014 WL 3377990, at *6 (N.D. Cal. July 10, 2014). However, *Ford* considered authority on "wage-and-hour class actions," and employment class actions generally, without consideration of the more specific California statute that dictates the use of the lodestar method. *Id*.

12

as a basis for removal jurisdiction in the Notice of Removal, the Court does not consider these additional amounts.

### 9. *Summary of Amount in Controversy*

Based upon the foregoing, the Court finds that the amount in controversy does not meet the $75,000 threshold. The total civil penalties substantiated by UBS, based upon the alleged violations, appears to be $30,400.00, of which plaintiff's 25% share would only amount to $7,600.[6] Because attorneys' fees and underpaid wages were not properly supported by UBS, such that the Court cannot determine their amount, the Court finds that the amount in controversy is insufficient to support removal based upon diversity jurisdiction.[7]

**B.     Award of Costs Pursuant to Section 1447(c)**

Plaintiff argues that he is entitled to costs and expenses of removal under 28 U.S.C. Section 1447(c). Plaintiff contends UBS's estimate of the amount in controversy was exaggerated due to miscounting and overstating penalties, including 100% of the penalties despite PAGA's

---

[6] The Court calculates the penalties as follows:

| Nature of violation, Labor Code §, and Initial/subsequent penalty | Initial x 24 pay periods | Subsequent x 7 pay periods | Subtotal |
|---|---|---|---|
| Failure to reimburse § 2802 ($100/200) | $2,400 | $1,400 | $ 3,800 |
| Prohibited deduction §§ 221-224 ($100/200) | $2,400 | $1,400 | $ 3,800 |
| No cash bond §§400-410 ($100/200) | $2,400 | $1,400 | $ 3,800 |
| Violation of IWC Order § 1198 ($100/200) | $2,400 | $1,400 | $ 3,800 |
| Failure to pay timely § 204 ($100/200) | $2,400 | $1,400 | $ 3,800 |
| Unpaid Overtime §§ 558/1194 ($50/100) | $1,200 | $ 700 | $ 1,900 |
| Meal and rest breaks §§ 512/558(a) ($50/100) | $1,200 | $ 700 | $ 1,900 |
| Inaccurate wage statements § 226 ($100/200) | $2,400 | $1,400 | $ 3,800 |
| Unlawful Waiver § 432.5 ($100/200) | $1,200 | $1,400 | $ 3,800 |
| | | TOTAL: | $30,400 |
| | | 25% for Plaintiff | $ 7,600 |

[7] The Court notes that, even if it had included the amount of underpaid wages estimated by UBS in the NOR ($21,122.48, NOR ¶ 17), and considered 25% a permissible estimate for attorneys' fees, the total amount in controversy would still have been under $36,000, and thus well under the jurisdictional limit.

13

limitation of 25% to a private plaintiff, and subtly tried to mislead the Court by suggesting that "if the penalties were aggregated with respect to all of the individuals Plaintiff seeks to represent, the amount in controversy would *significantly* exceed the jurisdictional threshold" (NOR, ¶ 15, emphasis original), when UBS knows such aggregation is expressly prohibited by *Urbino*.[8]

The Court disagrees. UBS did not rely on the latter argument in calculating the amount in controversy. Moreover, although the Court disagrees with many of the other arguments made by UBS, its arguments were not unreasonable based upon the available authorities. A court "may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal" or there are "unusual circumstances." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 140, 141 (2005). No unusual circumstances exist here. Plaintiff's request for attorney's fees is therefore **DENIED**.

## IV. CONCLUSION

Based upon the foregoing, the Court **GRANTS** plaintiff's motion to remand. This action shall be remanded to the Alameda County Superior Court. The request for attorneys' fees and costs under section 1447(c) is **DENIED**.

This terminates Docket No. 10.

**IT IS SO ORDERED.**

Dated: July 5, 2018

                                                             **YVONNE GONZALEZ ROGERS**
                                              **UNITED STATES DISTRICT COURT JUDGE**

---

[8] In a case with "multiple plaintiffs who assert separate and distinct claims," the claims cannot be aggregated "to satisfy the amount in controversy requirement." *Urbino v. Orkin Servs. of California, Inc.*, 726 F.3d 1118, 1122 (9th Cir. 2013) (quoting *Troy Bank v. G.A. Whitehead & Co.,* 222 U.S. 39, 40 (1911)). Similarly, the claims of class members cannot be aggregated to meet the jurisdictional threshold unless they "unite to enforce a single title or right in which they have a common and undivided interest." *Id.* (quoting *Snyder v. Harris* 394 U.S. 332, 335 (1969)). Thus, the Ninth Circuit has held that, in a PAGA action, the penalty claims of the aggrieved employees cannot be aggregated to meet the jurisdictional minimum. *Id*.